**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

NATIONAL LABOR RELATIONS BOARD,
Petitioner,

v.

D.C. MASON BUILDERS,
INCORPORATED,
Respondent.

No. 97-1414

On Application for Enforcement of an Order
of the National Labor Relations Board.
(6-CA-27284)

Argued: October 31, 1997

Decided: December 31, 1997

Before MURNAGHAN, WILKINS, and NIEMEYER,
Circuit Judges.

_____

Enforced by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Melvina Carrie Ford, LAW OFFICE OF MELVINA C.
FORD, Alexandria, Virginia, for Mason Builders. Fred Barry Jacob,
NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for
Board. **ON BRIEF:** Frederick L. Feinstein, General Counsel, Linda
Sher, Associate General Counsel, Aileen A. Armstrong, Deputy Asso-
ciate General Counsel, Peter Winkler, Supervisory Attorney,
NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for
Board.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The National Labor Relations Board (the Board) petitions for enforcement of an order the Board issued finding that D.C. Mason Builders, Inc. (Mason) committed various unfair labor practices and breached a collective bargaining agreement. See 29 U.S.C.A. § 160(e) (West 1973). We enforce the order.

I.

In 1993, Mason, a masonry contractor, entered into a collective bargaining agreement (the Agreement) with the International Union of Bricklayers and Allied Craftsmen, Local Union Number 15, AFL-CIO (the Union). Initially, Mason paid the wages and fringe benefits specified therein and otherwise complied with the Agreement. In November 1994, however, Leroy Hunter, Sr., the acting business manager for the Union, approached Mason's president, Leslie Cummings, concerning the discharge of two union stewards. Cummings stated that the stewards were discharged for incompetence. Hunter Sr. responded that he would send Cummings a steward about whose competence Hunter Sr. had no doubt--his son, Leroy Hunter, Jr. Shortly thereafter, Hunter Jr. began working for Mason on a courthouse project.

Approximately one month later, in December 1994, Hunter Jr. filed a grievance alleging that Mason had violated the Agreement by improperly stopping work on the courthouse project and by not paying the correct hourly wage. In response to Hunter Jr.'s grievance, Cummings told him "that if [he] didn't want to be on [a Mason] job, to get the [expletive] off; that he was tired of this [expletive] that [he] and [his] dad were trying to pull on him." J.A. 149. In January 1995, Hunter Jr. filed another grievance concerning two other wage-payment matters. Both the December and January grievances were

2

submitted by Hunter Sr. to Cummings. When Hunter Sr. received no response, the grievances were submitted to a joint committee appointed pursuant to the Agreement to resolve grievances.[1]

Tensions between Cummings and Hunter Jr. can also be traced to events arising out of a December 1994 inspection of the worksite by a representative of the Occupational Safety and Health Administration (OSHA) for safety violations. Hunter Jr., as a union steward, was present for the inspection and afterward asked the OSHA representative if Mason was required to hold safety meetings. The representative replied that such meetings were not required, but that they might be a mitigating factor if violations were found. The following morning, Cummings stated that he had been cited for violations and that he knew Hunter Jr.'s statement to the representative about safety meetings had resulted in an increase in Mason's fine. One week later, Mason ceased work on the courthouse and laid off all of its employees. After a work stoppage of several weeks, Mason resumed work on the courthouse project and recalled one of its bricklayers. Hunter Jr. was not recalled, even though the Agreement provided that "[t]he steward shall be the first bricklayer called back to work in the event of any work stoppage of any type." J.A. 28.

In June 1995, the Board charged Mason with violations of § 8(a)(1), § 8(a)(3), and § 8(a)(5) of the National Labor Relations Act (NLRA). See 29 U.S.C.A. § 158(a)(1), (3), (5) (West 1973 & Supp. 1997). Approximately one month later, the Pittsburgh Regional Office of the Board received a handwritten, undated letter from Cummings stating, "We wish to remind all parties concerned, we have never had a [b]inding agreement with [the Union.] If the [Board] chooses to use it[s] time to pursue this matter so be it." J.A. 69.

After conducting a hearing, an administrative law judge (ALJ) found that Cummings' statement to Hunter Jr. following the filing of the December grievance constituted coercion in violation of § 8(a)(1). Additionally, the ALJ found that Mason's refusal to rehire Hunter Jr. was motivated in part by Hunter Jr.'s union activity, that Mason failed

---

[1] The Board credited evidence that although Cummings was notified of two hearings--one for each grievance--he failed to attend or send a representative to either hearing.

3

to demonstrate that it would not have rehired Hunter Jr. were it not for his union activity, and consequently that the failure to recall Hunter Jr. constituted a violation of § 8(a)(3). Finally, the ALJ found that Mason breached the Agreement by sending the letter to the Board expressly repudiating the Agreement, refusing to respond to the grievances, failing to make appropriate fringe benefit contributions on behalf of its employees, and refusing to recall Hunter Jr., and that these breaches constituted a refusal to bargain collectively in violation of § 8(a)(5). The Board adopted all of these findings.

In deciding whether the order of the Board should be enforced, we review questions of law de novo; however, we are bound by the factual findings of the Board if they are supported by substantial evidence on the record as a whole. See 29 U.S.C.A. § 160(e); Industrial Turnaround Corp. v. NLRB, 115 F.3d 248, 251 (4th Cir. 1997). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and consists of "more than a scintilla but less than a preponderance." Vance v. NLRB, 71 F.3d 486, 489-90 (4th Cir. 1995) (per curiam) (internal quotation marks omitted). Additionally, we must defer to a choice made by the Board between two reasonable views of the evidence regardless of whether we would reach the same conclusion on de novo review. See Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951).

II.

In opposing the petition for enforcement, Mason first argues that the finding of the Board that Cummings threatened Hunter Jr. in violation of § 8(a)(3) is not supported by substantial evidence. We disagree.

Section 7 of the NLRA grants employees "the right to self-organization, to form, join, or assist labor organizations ... and to engage in other concerted activities for the purpose of collective bargaining." 29 U.S.C.A. § 157 (West 1973). That guarantee is implemented by § 8 of the NLRA, which provides that it is an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of [their § 7] rights." 29 U.S.C.A. § 158(a)(1). An employer violates § 8(a)(1) when it threatens to discharge employees in retaliation for union activity. See, e.g., NLRB v. Nueva Eng'g, Inc., 761 F.2d 961, 966 (4th Cir. 1985).

4

When making a determination concerning the coercive effect of an employer's statement, we must view the statement "in the context of its labor relations setting." J.P. Stevens & Co. v. NLRB, 638 F.2d 676, 687 (4th Cir. 1980) (internal quotation marks omitted). "The test of coerciveness is not whether the language or acts were coercive in actual fact, but whether the conduct in question had a reasonable tendency in the totality of the circumstances to intimidate." Standard-Coosa-Thatcher Carpet Yarn Div., Inc. v. NLRB, 691 F.2d 1133, 1137 (4th Cir. 1982) (internal quotation marks omitted). And, "[t]he coercive effect of an employer's speech ... is a question essentially for the specialized experience of the" Board. J.P. Stevens & Co., 638 F.2d at 687 (internal quotation marks omitted).

We conclude that substantial evidence supports the finding of the Board that Cummings' expletive-laden suggestion to Hunter Jr. that he quit his job, made in direct response to Hunter Jr.'s filing of the December grievance, had a reasonable tendency to intimidate.[2] See NLRB v. Intertherm, Inc., 596 F.2d 267, 275-76 (8th Cir. 1979) (holding that employer's statement to employee "that if [he] were unhappy with the company, he should look for another job" was "essentially a thinly-veiled threat to fire [the employee] for his union activities").

III.

Mason next contends that the finding of the Board that Mason discriminated against Hunter Jr. in violation of § 8(a)(1) and § 8(a)(3)[3] by failing to recall him to work was not supported by substantial evidence. This argument has no merit.

_____

[2] Mason argues that the Board erred in finding that Cummings did not deny making the statement. The record reflects, however, that although Cummings generally denied threatening his employees, he did not specifically deny making the statement in question, which he may not have considered to be a threat. In any event, because the Board credited Hunter Jr.'s allegation that Cummings made the statement, the record supports the finding by the Board that the statement was made.
[3] Subsection 8(a)(3) provides, in pertinent part, that "[i]t shall be an unfair labor practice for an employer ... by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization." 29 U.S.C.A. § 158(a)(3).

5

An employer commits an unfair labor practice when it discharges or fails to recall an employee because of the employee's union activities. See NLRB v. Low Kit Mining Co., 3 F.3d 720, 727 (4th Cir. 1993). If the Board finds that the failure to recall the employee was "motivated by anti-union considerations," the failure to recall is unlawful unless the employer proves that it would not have recalled the employee even absent the anti-union considerations. Id. at 728 (internal quotation marks omitted). Motive is a question of fact, and the Board may rely on circumstantial as well as direct evidence to find that discriminatory motive has been established. See id.

Here, the record establishes that Mason previously discharged two union stewards, threatened Hunter Jr., and refused to attempt to resolve Hunter Jr.'s union grievances. This evidence alone is more than sufficient to support the inference by the Board that Mason's failure to recall Hunter Jr. "was based in part on ... [his] union activity." J.A. 211. Because Mason did not offer credible evidence that Hunter Jr. would not have been recalled even absent the discriminatory motivation,[4] substantial evidence in the record supports the rejection by the Board of this contention, and the finding of discrimination must be affirmed.

IV.

Mason also argues that the finding of the Board that Mason breached the Agreement in violation of § 8(a)(1) and § 8(a)(5) was not supported by substantial evidence. We disagree.

All four grounds offered by the Board for the conclusion that Mason breached the Agreement are supported by substantial evidence in the record. First, the Board reasonably found that the letter that Cummings sent to the Board denying the existence of a binding agreement constituted a repudiation of the Agreement.[5] Second, the

_____

[4] Cummings testified that he recalled the other employee because he believed he had a right to do so under the Agreement. The Board correctly found, however, that Cummings' interpretation of the Agreement was unreasonable. Although it is not explicitly stated in the order, we assume the Board further reasoned that Cummings would have given the Agreement its correct interpretation were it not for his anti-union animus.

[5] Mason did not argue before the Board, nor does it now contend, that it possessed a right to repudiate the Agreement. Rather, it claimed only that as a factual matter, it did not repudiate the Agreement.

6

finding of the Board that Mason violated the Agreement by failing to make fringe benefit contributions in 1995 was supported by Hunter Sr.'s credited testimony to that effect. Third, the finding of the Board that Mason violated the Agreement by failing to participate in the grievance process[6] is supported by undisputed evidence that Mason failed to send a representative to either of two hearings of which it had notice regarding employee grievances. Finally, the finding of the Board that Mason breached the Agreement by failing to recall Hunter Jr. is supported by the explicit language of the contract and by undisputed testimony that Cummings recalled another employee to the courthouse project instead of recalling Hunter Jr.

V.

Mason finally contends that the remedies assessed by the Board are too broad. Because Mason failed to raise this issue before the Board, however, we lack jurisdiction to consider it absent "extraordinary circumstances." 29 U.S.C.A. § 160(e); Woelke & Romero Framing, Inc. v. NLRB, 456 U.S. 645, 665-66 (1982). Because Mason does not argue that any such circumstances exist, we do not address this argument.

VI.

For the foregoing reasons, the order of the Board is enforced.

ENFORCED

_____

[6] Section 8(d) provides that collective bargaining includes meeting in good faith at reasonable times to resolve questions that arise under the labor agreement. See 29 U.S.C.A. § 158(d) (West Supp. 1997); see also United Steelworkers v. Warrior & Gulf Navigation Co. , 363 U.S. 574, 581 (1960) (explaining that "[t]he grievance procedure is ... a part of the continuous collective bargaining process").

7